21-3404 Von Clark Davis v. Charlotte Jenkins oral argument not to exceed 30 minutes per side. Ms. Barnhart for the petitioner appellant. Good afternoon. Good afternoon Chief Judge Sutton and members of the en banc court. I am Erin Barnhart and I represent the petitioner appellant Mr. Davis and I would like to reserve five minutes for rebuttal. I would like to focus my argument today on our claims based on written and oral statements related to Mr. Davis's jury waiver. Because the supplemental briefing is the first time Mr. Davis presented to this court his newly certified claim that his waiver was not knowing and voluntary, I would like to begin there and be sure that I answered all of the court's questions about that claim before discussing the due process claim stemming from the waiver's enforcement which the panel decided. Which argument is stronger from your perspective? The knowing and voluntary claim, Judge Mathis. Mr. Davis's entitlement to relief on his knowing and voluntary claim is the natural resolution for any shortfalls that this court may otherwise find in the due process claim. That is, if the Constitution was not violated when Mr. Davis was forced to be resentenced in 2009 by three judges other than those specified by name in his waiver agreement, then Mr. Davis's waiver was constitutionally invalid because he waived his right to a jury based on a mistaken belief that if he did so he would be tried and sentenced by those three named judges. Can I ask you about the contents of the waiver? This is just a practical question. When I read the waiver I don't see anything about sentencing. Is there anything in there that I'm missing? Not the waiver, but the waiver colloquially mentions both trying in the guilt phase and if it gets that far sentencing. So because you have this kind of bargain theory and I guess this is different in kind than your bargain theory and so I don't mean to skip there, but I just have a quick question and I'll be quiet. If you're considering the four corners of the waiver itself and what right he had, the right just went to the trial and not the sentencing. You've abandoned the sentencing claim rightfully so it seems to me. You don't have a right to be sentenced by a jury or judges of your choice. You agree with that? There's not a constitutional right to jury or a bargain theory. The only right comes from I wouldn't have done this but for some kind of bargain theory as to sentencing. Correct. Okay. I think I'm following. I don't want to suggest this is determinative, but your argument is dependent on it having on your assertion that somehow your client believed that even if he was litigating his habeas case, you know, many many years later that you know it would have been reasonable for him to have expected that his sentencing that the same judges would always be involved. Right well I think it's a little more nuanced than that Judge Gibbons and as the this court pointed out the last time Mr. Davis was before this court, Ohio is kind of unusual in holding Mr. Davis to his jury waiver here. In the federal system, the jury waiver would not bind him if he were to return for a new sentencing because for that very reason that most people aren't thinking 25 years in the future when they're waiving jury for the proceeding in front of them. Following up on Judge Gibbons question, the jury waiver, this is where I'm having hang up. The jury waiver goes to the trial. There's no such thing in Ohio or in most as a jury sentencing. Well again, Mr. Davis waived his jury for both the trial and the sentencing. But the three judges made all the factual findings necessary, right? Sure. The original three. Sure and so I mean, I think I see where you're going, which is that you know only the guilt phase jury right is the only constitutional right at issue. But I think what's important to keep in mind is that he waived that fundamental constitutional right in exchange for a promise to be tried and sentenced by these judges. So there were two parts of the promise in that bargain. Ohio fulfilled that. He was tried and sentenced by those judges and now many, many years later, as Judge Gibbons is pointing out, our court throws it out. You go back to what you get because they are entitled you to sentence. It would be like saying I originally was sentenced by Judge Thapar and he promised he'd sentence me again but now Judge Larson is sentencing me. Right, so when this court granted the writ, Ohio vacated that sentencing proceeding. So I mean, that's a legal nullity at this point. So he really hasn't received a sentencing by those three judges. Can I just make sure I'm understanding one part of this? There's one thing we would all understand is you have a plea bargain that doesn't mention judges but it's probably quite right that when the defendant enters into the plea bargain, he has an expectation that that judge will be the sentencing judge. And I'm assuming we agree that if the judge sadly dies between entering plea bargain and sentencing, that plea bargain does not impliedly, even though that was exactly what the defendant and his counsel had in mind, doesn't impliedly require only that judge and then you start all over again. We're in agreement there, right? That's right. So then it turns on the language of this agreement. And the thing that I guess I'd like, it's pretty extraordinary to commit through a plea agreement who the judge is going to be for all time. We have to agree that's out of the ordinary. And there's really quite a good explanation for why it says what it says. It just, after you mention the three, it says, or you weren't there either, all the same being the elected judges of the general division. So in other words, once you see that, you realize, oh, those are the only three possibilities. In other words, it might well have just said the judges of the court. Except for before the prosecutor typed that language into the agreement, Mr. Davis filed a motion for notice of who the prospective judges would be, in which he told the court he could not make a valid waiver without knowing the identity of the judges. Yeah, so I think these two things are exactly the same as my first example. And because I find, I think it's pretty extraordinary to get a commitment from a court to only certain judges, you've got to spell the whole thing out. And I've got to say, it would be very unusual for a prosecutor to propose that. And I think it would be highly unusual for a judge, Judge Brewer, to accept it. So to me, you're going out of the norm. I mean, it's a great argument, but it is going out of the norm of expectations. It's courts, not judges. And if you're going to say that's what happened, you better spell it out. And I don't think this remotely spells that out. I mean, I would disagree for a couple reasons. As we pointed out in our supplemental brief, you can compare this waiver to the other waiver in the case, the partial waiver for the judicial determination of the other aggravating circumstance. And those two waivers are nothing alike. That other waiver doesn't say who the judge will be. It's just plain and simple, a statutory election. My view is that this is such an unusual thing. It would have to be spelled out. And once you spell it out enough, no prosecutor is going to propose it, and no judge is going to accept it. But I'll accept the possibility. We could all cross international date lines, and there is some judge that will do it. But that would be the only setting in which it would be enforceable. Well, and I think that argument might defeat the bargain claim, but for the knowing and voluntary claim, there's no reason for Mr. Davis to have known that. You know, when he asked for this information... knowing and voluntary was totally on the assumption in a regular criminal case that the judge that did the Rule 11 was the judge that was going to sentence. And we can all agree, even though no one enters that without that assumption, they don't get to act on it if the judge dies. Right, but that case is not this case. And that's exactly what the clearly established federal law directs us to look at, the particular and unique circumstances of this case that make it different from that ordinary case. That ordinary case is what Judge Gibbons mentioned in her dissent from the panel. Judges are fungible. We totally agree with that. I agree this is quite unusual. I've never seen a jury waiver that names the judges like this. But in this case, Mr. Davis said he needed to know the identity of the judges to make his decision. So he let the court and the prosecutor know that he was relying on this to make his decision. And in response, the court said, for the record, here are the judges. The court didn't say, now, just so you know, this isn't a guarantee, or, hey, you really shouldn't be making your decision based on this because that could change. So he was given incomplete, misleading information. It seemed they were answering his questions. Judges could die? Yeah. Is that incomplete? Well, if that happened, he wouldn't be bound by this waiver agreement any longer. I have a question. Were these the only three judges that were the elected judges of this court that were eligible to? They were, Judge Bush. Wouldn't that be just public knowledge? Well, I mean. On a website and figure that out? I don't think in 1984. Well, maybe not a website, but wouldn't it have been general knowledge? Yeah, you know what. What the elected judges are of this court. Walk around the house of the courthouse, most likely, and see the judges' names on the door. But so, again, that I don't. I don't think his counsel would know this. Okay. Would any counsel know this? Well, I mean, I don't think his counsel did because they filed the motion. I mean, who knows if the judge's schedule had a conflict, if there was some sort of legal reason why a judge needed to recuse. Chief Justice Maureen O'Connor said the same thing in the direct appeal oral argument. She said that really doesn't mean anything because the Ohio Supreme Court could appoint another judge to sit if one of these judges needed to recuse. And the Ohio Supreme Court didn't rely on that. That wasn't determinative for them. So in some ways, this explains why he needed to know who the three judges would be, because there could be events that could happen that would make it be someone else that would be one of the three judges. I think that's right, Judge Moore, as Judge Sutton said. I mean, that's always the case. But you don't. But that's unusual, right? Like in Hamilton County, where there are so many common pleas judges, you make this election before you know who the three are going to be, right? I mean, I don't. Practice trial work in Hamilton County. But I mean, it just seems like this is just some kind of sui generis agreement. I'm not sure it's an agreement. But for this county where you would only have these three, like you wouldn't have a right to know who the three are going to be, right? Normally under Ohio law. I don't know that there's a right to know. I mean, you do know, and you have a right to withdraw your waiver before trial begins after knowing that. Well, doesn't this comport with Santabello that talks about when a plea rests in any significant degree on a promise or agreement of the prosecutor so that it can be said to be part of the inducement or consideration, such promise must be fulfilled, period. Yes, Judge Strands. I mean, that is the basis of the bargain claim that the Supreme Court has said that when you're dealing with a bargain like that, it's contract law principles, but it's more than that, that the Constitution induces a due process flavor to that type of thing and that fundamental fairness requires that the defendant get what he bargained for. I don't see a bargain here at all, counsel, because this is all statutory. I mean, the defendant has a unilateral right to waive a jury and proceed by trial by the court, and that if he does in a capital case, the law is Ohio Code 2945.06, which provides that in the event a defendant waives his right to trial and elects to be tried by the court, he shall be tried by a court composed of three judges consisting of the presiding judge at the time of the criminal case and two other judges designated by the presiding judge. That's exactly the procedure that happened here, and there's only three judges on the Butler County Common Pleas Court General Division. So there's no bargain here. All he did was he elected his unilateral right to be tried by the court, and what happened here is exactly what the statute requires. So I don't see a bargain here at all. I don't see anything other than the statute being complied with. And again, to the extent that you don't see a bargain... There isn't a bargain. Who's the bargain with? Let her answer. Let her answer. To Mr. Davis's eyes, as the warden said in their petition for rehearing en banc, as Mr. Davis saw it, he was making this bargain. He said he needed to know this information before he... Did he know the judges of public record? I mean, that's a public record, and all they did was they listed the judges, the three judges. Right, but they didn't say, well, these are just judges of public record. He answered his question. He said these are who the judges would be for the record. They're the only judges that could sit by the statute. But again, if one of them wasn't available for some reason that wouldn't be a matter of public record, then another judge would have been substituted. That's what happened in 2009 when he was resentenced. One of the judges was recused because one of his trial attorneys worked at a firm he used to work at. So another judge was substituted. That type of thing happens all the time, and there'd be no reason for Mr. Davis to have known that. How do we view the role of the prosecutor here? We were talking about a bargain, and there's been some discussion that maybe there was not really a bargain. The prosecutor was very involved in this waiver in terms of apparently being present for some of the discussions, being there for the colloquy. Apparently the agreement, as we were calling it, the waiver, was typed up on his or her letterhead. The prosecutor's office, are they sort of tacitly in agreement in some fashion here in terms of this waiver? They played such an active role. In a due process sense, Judge Cole, I think that is what the analysis would be. In the 11th Circuit, Judge Pryor has a case. It's not a habeas case, but it is a knowing involuntary case. United States v. Hakeem that we cited. One of the things he mentions is that there the defendant was given materially incorrect information by the judge, but at no point did the government dispute the veracity of that. In fact, it supplemented, it gave other information. You can't make it a bargain. Prosecutors are always involved. You can't have ex parte communications. In federal court, you're a federal defender. In federal court, the AUSA is there. The AUSA often types up the waiver because that's what they do. That's just part of the role of a prosecutor. It doesn't make them a bargain like a plea agreement. Those are two separate things. I think most criminal defendants would be shocked to hear that prosecutors have a say in their waiver. I mean, in some jurisdictions, they do. Actually, you can't unless the government agrees to it. Ohio, unilateral in Ohio. Correct. I read you the statute. But to get back to Judge Cole's question, Judge Pryor, I'm not saying that's what makes it a bargain, but I'm talking sort of about the due process and the fairness aspect of it, is both the court and the prosecutor, nobody spoke up to give Mr. Davis a complete understanding of... The prosecutor could have objected, I take it. Yes, or the prosecutor just could have said, hang on, just to be clear, he says he needs to know this information to waive, but like, you know, he really shouldn't rely on that because that could change. The prosecutor can object in Ohio. Correct. Correct. The particular judge who reassured him and told him the names of the three judges, including that judge, and did that several times, that judge could have said, these are what we plan on, but we don't know for sure, in which case then Mr. Davis could have decided, hey, I don't want to have a trial by three judges when I don't know who's going to be there in the end, and I'll go with the jury. That's right. He was relying on the reassurance of the trial judge, repeated reassurance, and he had also, Davis had also said, I need to know who the three judges are before I can decide whether to waive my jury right. And your argument is that he reasonably expected to be resentenced 25 years later by these same three judges? Is that your argument? Judge Griffin, he reasonably expected that if he were to return in 25 years and these judges weren't available, that he wouldn't still be bound by that 25-year-old jury waiver. The prosecutor could have said. Why not? Because part of what he bargained for, part of what he gave up his right for, was no longer able to be fulfilled. And so because he couldn't get what he was told he'd be getting, why should he have to continue to give up his fundamental constitutional right? But he doesn't have a fundamental constitutional right to the jury sentencing. Sure, but he gave up his fundamental constitutional right to a jury trial in exchange for the promise. That's not the remedy he's seeking now. He doesn't want a jury trial on the merits. He wants something different. Well, he hasn't asked for that. I think, as the warden pointed out, that logically that could be a remedy. We haven't asked for that. He didn't ask for that below. But truthfully, because it was his guilt phase fundamental right that has been violated here, that would be the remedy if he had asked for that. Judge Ray, you had one, and then Judge Gibbons. Go ahead, Judge. Judge Gibbons, go ahead. The argument you are making seems to relate to, you know, I'm not sure that it's evidentially supported by evidence, but your contention that Mr. Davis had a mistaken belief. And why is it now up to us to correct that mistaken belief through the theory you're arguing? If there's any failure here, isn't it really an ineffective assistance of counsel claim? And you haven't made that claim. That's true. I mean, you're alleging the unconstitutional conduct you're alleging comes from the court carrying out the provisions of the law. Well, I mean, the Supreme Court has not cordoned off misunderstandings under knowing involuntary claims that could have been corrected by counsel and said that these don't sound in a knowing involuntary sense. They only can be brought as IAC claims. As far as an evidentiary basis for your contention, we would have to find it in the fact that there was a request from the defense to know the names of the judges.  But you'd have to find that the. No, to look for the evidentiary support. Sure. I think the motion for notice provides that. That had a mistaken belief that these judges were going to be around forever or he was going to have a right to a jury trial. The basis for that would have is not really in the record. It comes from assertions made by counsel later. And if we were to infer an evidentiary basis for it, it would have to come simply from the fact that the names of the judges were requested. Mr. There's an affidavit from Mr. Davis in the state court record. That's what I was going to provide that. Sure. And that was submitted at what point? In state post-conviction proceedings, I believe. I'd also point out, Judge Gibbons, just to follow up on the defense counsel point, the Supreme Court in Brady mentioned that one of the circumstances that needs to be considered are commitments made to him by the court, the prosecutor or his own counsel. So, again, counsel's failure doesn't mean that it can only be brought as an IAC claim. That can be a knowing involuntary, a basis for a knowing involuntary claim. Oh, yeah. Why does your theory really matter on whether there's three judges or it's the Hamilton County example where there's ten? There's ten judges and the defendant says, I'll go with the judges because I look at those ten. I don't know which three I'm getting, but I know that none of them will sentence me to death. And then 25 years later, he's retried, looks across the new ten judges across the bench and thinks, boy, this is a totally different bench. I want to go with the jury now. Or suppose the reverse is true. Suppose he selects the jury up front and he knows what jury pool he's getting, not which exact jurors, but he knows the general jury pool. Twenty-five years later, the case comes back. He says, boy, this other county's really changed. It's a lot more conservative these days. I don't want this jury pool anymore. I want to go with the judges. Why are those cases really much different than this case? As to your first question, is why does it matter if it's only three judges or ten judges, I don't think it does matter. Maybe I'm not understanding. Whenever you make this decision, you're always looking across and saying, here's the jury pool and here's the potential judges. Was it three or ten? So you're always taking accounting of the options. And those options, when there's some delay in time, there's always going to be a change in the jury pool, in the judges. And you always can say, boy, if I'm now looking at things, this is not the decision I would have knowingly made before if these were the options. Sure, but that's not his claim here. He's not saying, if I was going to make this decision today, I would have made a different decision. He's saying, back when I made this decision in 1984, my understanding, turns out, is not the understanding that the court says is correct now. When you make the first decision, you know that there's ten judges. You know it's going to be three of those ten judges. Why is it that different if you know the exact names? I mean, because, I mean, I think we cited a Florida case that talks about how it's, you know, kind of obvious that knowing who the decision maker is an important point. So, I mean, are you suggesting that going in blind versus knowing who your decision maker is, there's no difference? I mean, the statute gives you the choice between the two. And you know the body. And the problem here is he doesn't, he presumably didn't like the new judges he was going to get, and so he wants to go with the jury. And it feels to me it's very similar where you're just looking at the options and your preferences have changed based on passage of time and the change in the composition of the decision makers. It might seem similar in the present day if you were just looking at the choices now. But the difference is that the facts, the particular circumstances that the Supreme Court says we have to consider at the time he made the waiver are very different. You know, as we said, this is unusual, but it's unusual in a way that really matters. Can I ask a question that I just want to make sure I'm understanding? I know you would say this is this case, but can you think of any case outside this one where in the plea deal there was a commitment that only this judge for all time would be the one that either handles sentencing or anything else? So has that happened before? I know you say it happened here, but has it happened before either with a single judge or three judges or five judges? I'm not aware of that, no. The misleading conduct really was the trial judge Brewer who said the three judges will be the ones here in the general division, Stitzinger, Moser, and myself, and then repeated that. And that was the promise. And that was in direct response to his motion where he said he needed to know that information to make his decision. And just, you know, we cited a Third Circuit case in our brief, Jamison v. Clem, which is an AEDPA case as well, granting the writ on a knowing involuntary claim. And I would just suggest that our case is even stronger on the facts than that one. In that case, it was being misled by silence. The court failed to inform the defendant that he was facing mandatory prison time when he entered into his waiver. And there, the court said that that alone is not knowing involuntary because he didn't have the important information he needed to know to make a knowing involuntary decision. I would say that in our case, the facts are even beyond that because it wasn't just omission. It was an affirmative representation that was incomplete or misleading to Mr. Davis. Thank you. You'll get your full rebuttal. Thank you. Good afternoon. Good afternoon, Chief Judge Sutton. My name is Elliot Geiser on behalf of the warden. I would like to begin by talking about Davis's jury waiver claim. We're picking up on the conversation that the court has just been having. Davis has advanced at least three different theories for this particular claim. First, there's the changing circumstances theory that his waiver was initially valid but changing circumstances over time rendered the waiver invalid. Second is the deception theory, which we've been focusing on now, which is that he was misled into believing that he had a contract with the state, meaning the waiver was always invalid from the very beginning, ab initio. And the third is this bargain theory that he waived in exchange for three specific judges and that the waiver is, in fact, valid to this day and enforceable so that the state's alleged breach, by trying to sentence him in front of three different judges, entitles him to some kind of contract remedy like rescission or specific performance. All three of these theories are mutually exclusive, and he only presented the first one to Ohio's courts and doesn't press it now. He never presented the second or third theory to the state court. And thus, under the rule that to be exhausted, a habeas petition must advance the same claim under the same theory? Would you lose these other theories had they been exhausted? Well, if he had exhausted them, he probably wouldn't be using these theories because the state court would have rejected them on the merits. Who's in front of us? I don't understand. In other words, without your exhaustion arguments, do you lose these other theories? Oh, no, no. We still prevail under AEDPA if Richter and Johnson apply and then the court assumes that they were adjudicated on the merits. Would you lose without AEDPA? No, we don't think we would lose without AEDPA for several reasons. All right. So the first, I think, important thing on the defaulted bargain theory, so the contract theory, which I think has been retreated from a little bit today, is that a reasonable jurist can conclude that not every waiver is a bargain. Plea bargains stand alone under Puckett as the kind of agreement that are generally and essentially contracts. And there's no precedent cited by counsel that clearly establishes under the Supreme Court's holding that other kinds of unilateral waivers constitute the type of contract that contract principles would therefore apply. Our brief lists a couple of different examples. If you speak to the police without counsel, if you waive your Miranda rights, if you choose to represent yourself pro se, there's nothing that the state is promising in exchange for those things, provided that it's knowing and voluntary. Are you saying this is a plea bargain with the prosecutor? Is that what you're saying? No, Your Honor. I'm saying it's not like a plea bargain. I'm saying that Mr. Davis is confusing plea bargain principles, when he's quoting from Puckett and Sanabella, with other kinds of rights waivers, which are valid and enforceable, that are unilateral. But the rights waiver here, which was signed by the judge, is that right? That's correct. So the judge, the very same judge who said to him, yes, you will have judges Stitzinger, Brewer, and Moser, correct? Yeah, the judge signed this particular waiver, yes. I think there are other problems with the contract theory, besides the fact that this is using plea bargain principles to try and apply to other kinds of waivers. The prosecutor didn't sign this document. The prosecutor wasn't negotiating, and the prosecutor couldn't ever promise particular judges. There's no reason to believe that. But it's… That's why I was asking you, is this a plea bargain with the prosecutor? It's not. Nobody's saying it is, correct? Well, Mr. Davis's cases only deal with plea bargains with prosecutors, Your Honor. They don't deal with… Don't they have a broader, like Sanabella, have a broader principle that you get the benefit of a bargain that you made if you're relying on that bargain to give up certain constitutional rights, i.e. the right to trial by jury? Well, Your Honor, we disagree that this is any type of bargain whatsoever from the beginning. It's a unilateral waiver offered by Ohio law that the court has to accept. The court can't say, you know what, actually I don't want to accept your jury waiver because I would prefer to have this case tried in front of a jury. No, but Judge Brewer could have said in response to the question, I can't guarantee you who your judges are going to be, so you'll have to decide. Do you want to waive your jury right and take whoever the three judges happen to be or not? But instead, Judge Brewer said, I assure you who your three judges will be and mentioned it by name and that was repeated several times and was in writing, correct? Well, Your Honor, it was in writing. I think it's important to recognize the procedural posture of how this came to be. There was a motion made by his counsel to say, please tell us who the judges would be. That motion sat for a while until the colloquy that happened before the trial began, the day before it began. I don't think it was simply as you said. I thought it was that to make a valid, fully informed decision as to whether he should waive his right to trial by jury, he needed to know the identity. So it was conditioned. Well, Your Honor, he may have thought of it, he put this together in a motion beforehand and now says that this is something that's conditioned. In our brief, the en banc court wasn't conceding that he believed at the time that this was a contract for all time. We were saying that's now the position that he's advancing. He's saying right now as a post hoc rationalization that this was really imperative to me, these particular three judges, if it weren't for these three judges, but for these three judges, I would have never waived. When there's contemporaneous evidence, at least closer in time in his 1993 affidavit where he said I had no choice because the weapons under disability charge wasn't severed but to waive my jury right. And so there was a superseding, overwhelming reason for him to, for strategic purposes, not allow his charges to be heard by a jury that I think we don't actually know that he would not have chosen for a three-judge panel over a jury, but for the description of the three judges who are actually going to hear his case. And so I think it's important that the judge at the end of the colloquy, when he's talking about scheduling for the next day, says you know who the judges are. They're going to be the three judges that are here in the general division. Basically not I assure you for all time that these are going to be the judges. The judge didn't say that. Now the judge didn't say I can't promise you anything and just left it at that. But that would apply a knowing and voluntary to shift to the knowing and voluntary claim that I think we've been talking about. It would apply an appropriate standard. So the Caraca v. Miller case has the exact language that courts are not supposed to probe the minds of defendants in search of myths to bust before accepting waivers. It would be unreasonable to hold Ohio's courts to the standard that the judge has to search and destroy any conceivable misapprehension of the facts of the waiver beforehand. And isn't that especially true when the two facts here are basic facts of life? One, people die. Two, judges lose elections. So any defendant should have known those two facts, which could have kept any particular judge from serving in the future. Yes, Your Honor. We think that these are eminently foreseeable and well-known, well-understood facts of life. But he didn't need to say unless they die or lose an election or resign from the bench because those are baked in presumptions. That's right, Your Honor. We don't think that this becomes unknowing or involuntary because the judge didn't specify, you know, unless there's a car accident on the way to the courthouse tomorrow for one of these three judges. I think it was very plausible and reasonable to say. But why isn't it then just like a mistake of fact? Okay, fine, one of these judges is dead, so now we just make another election. Why would it have to be that we would splice the agreement such that, okay, the three judges, that's not what is key. The key is just the election itself. I mean, it seems to me that knowing who the three judges are on the spot is probably the most important thing you would want to know when you make the election, right? I mean, yes, in Hamilton County you might not know that or Cuyahoga, but here you would. And say, okay, fine, the facts of life are somebody retires, somebody dies. Okay, at that point, it's like a mistake of fact, whatever it is, all bets are off. We just go back to you make a new election. Well, I think, Your Honor, that would require interpreting a unilateral waiver, something like a contract where a mistake of fact is an applicable principle in contract interpretation. But why wouldn't, or just making a unilateral? It's a matter of discretion. The judge would do it as a matter of discretion, not because they had to, but as a matter of discretion the judge would say, the surviving judge or one of the surviving judges, would say, ah, we're happy to undo this as a matter of discretion. Isn't that one way of thinking about it? Well, so I'm not totally sure I understand what the judge was supposed to do here in that particular instance. In the event of a mistake of fact, so the hypothetical is, you know, one of the judges can't for some reason show up the next morning as the colloquy suggested that one of those judges would, that at the beginning of trial then Judge Brewer should have said, do you really want to stand by your jury waiver? Yes, that's the hypo. That would be what should happen, that if one of those judges couldn't appear, that Mr. Davis would have a chance to rethink whether he wanted to waive his jury right or not. Well, Your Honor, I think as a matter of discretion, that's one thing, but as far as the Constitution goes, nothing in the Constitution requires that. And there's no Supreme Court case that says if something that is outside the four corners of your waiver happens, and we think that that is a mistake of fact, that requires us to redo the election that unilaterally was offered to you. Well, but I'm under a mistaken impression, I guess, then when I make the waiver. I don't have full information. I don't know. I mean, it's, hey, I'm waiving. It's good for, you know, this ticket's good for one right only, this one. We go to trial, but we come back 25 years later. I mean, that ticket's no good anymore. I got a new one. I mean, I don't, it's not obvious to me that it's one or the other, but I, in terms of your position or hers on that point. I mean, I guess we could say, okay, fine, you waived what you actually, what you actually did was just made the election, and the election is going to be, it's going to go on forever. As opposed to the other view, which is I made the election for this moment in time. I got my trial and sentencing. So everybody got what they wanted, or I got what I wanted, but then circumstances have changed. So why don't you just put the guy to another election? I mean, the conviction still stands, right? It's just about sentencing at that point. Well, Your Honor, if Mr. Davis's theory is correct, that this was made under mistaken understanding, the whole conviction is predicated upon this jury waiver. So there's no principle that would allow this court to say, well, just do a resentencing with a new election. And part of that is Ohio law, but part of that is the fact that if this was constitutionally defective from the very beginning, then the whole conviction has to go. But your opponent did not ask for undoing the whole conviction, and you like to argue forfeiture and waiver and exhaustion. So surely you would argue all of that here on that. Well, the point that I'm making, Your Honor, is that finding a constitutional defect in these circumstances requires a harsh result, which should inform whether there was a constitutional defect in the first place. There isn't a constitutional defect in holding Mr. Davis to his knowing involuntary waiver. Can I ask you a separate question, which is if there was, let's say there was a mistake at trial and our court granted habeas and he went back for trial, would this waiver be binding or would he get a do-over because it's the trial which is what this waiver involved? Well, Your Honor, the way that Ohio law is crafted is that if you waive your jury right and have three judges and then there's some later send-it-back situation, then you get three judges again. This waiver under Ohio law is binding when you make it until the trial begins. And then once the trial begins, you've either elected to be in the world of three judges or in the world of a jury trial. So if the trial is vacated, would he be back before and he could opt to have a jury? My understanding of Ohio law at the time, which is the law that applies in 1984, is no. If this court says that it's incomplete, then the waiver would still apply. Unless this court says the waiver was invalid, in which case that vacates his conviction. But the Constitution doesn't require a springing, non-expiring, get-out-of-prison free card like Mr. Davis is sort of asking for. I think that it's also... I thought we were dealing just at the death penalty as opposed to letting him out of jail free. Well, I mean, so the conviction, if the conviction predicated on a waiver in front of three judges is invalid, that starts it all over again. That's the problem with this theory. This is why this is not a modest theory, and it doesn't matter that Mr. Davis is saying I'm only asking for modest relief. The camel comes in if the nose comes in, basically. And that's why this is a constitutional question of great suspicion. And this is why AEDPA requires that there be clear Supreme Court holding on point. And Santabella and Brady and Puckett, those things do not have to do with this particular circumstances. Those cases only apply at the highest possible level of abstraction. And those apply assuming that we don't have de novo review. Assuming that you don't have de novo review. That's correct, Your Honor. But AEDPA does apply here because this court doesn't grade state courts' opinions under Johnson v. Williams and under Richter. The assumption is if it was presented and actually exhausted, then AEDPA applies, and the burden is on the petitioner to show Supreme Court precedent that's directly on point. And if AEDPA doesn't apply, then we're in the question about whether this is exhausted and therefore procedurally defaulted, which we maintain that these are procedurally defaulted claims, which is why they're sort of new wine put into an old wineskin kind of situation. I'm not sure that I understand why you say it would create a new constitutional decision or line that would apply everywhere. Because it seems to me what you have is a very unusual circumstance. You had a request for, actually a demand before I make this waiver decision, for the names of the three judges. And then we find ourselves working forward in time, and we're talking about what does that mean. And this defendant has said it means I want a re-sentencing or I want to look at the waiver again at the sentencing level because that was covered in my waiver. Why would that be ever replicated again? Because it is dependent upon the unusual circumstances of this waiver. And if the government does not enter another waiver like this, then this is the only case where that will apply. Well, Your Honor, I think that the reason that it cannot be so cabined is that we are unaware of any Supreme Court case that says something outside of the plea bargain context is interpreted according to contract principles like this. It was an important rule when in Puckett the Supreme Court said plea bargains, the analogy doesn't always hold and it is an analogy, are essentially contracts. To say that jury waivers are essentially contracts would now spill over that principle into other areas of law. And there's no precedent for that as far as we are aware. Is this in the usual line of waivers or is this a very unusual circumstance that names these individuals and makes that the Santabello promise to this defendant and only this defendant? Well, Your Honor, I would fall back on the principle that this isn't a promise to this particular defendant so Santabello is not applicable at all. And to Chief Judge Sutton's point earlier that even if it is interpreted like a contract, this doesn't say expressly for all time and so because it is so unusual, you would expect that an unusual contract would have to specify its deviation from the ordinary course in clear and unambiguous terms. At most, this is ambiguous as to that point. Your statement that the panel would determine defendant's sentence should the need arise is part of that record also. And what your opposing counsel is arguing is that the need has arisen. Well, Your Honor, we disagree that the need has arisen in that particular statement but I think you're quoting from the colloquy that the judge offered. So now we're no longer in the contract theory. We're now in the unknowing voluntary theory and that's parole evidence as far as the contract theory goes. So if we're pursuing the theory that we believed it was a contract from day one, it was invalid because it wasn't actually a contract. And none of these promise principles come into bear. So, you know, the question about Santabello and Puckett only apply if this is like a contract. And so if it's not like a contract at all, then we're asking was this a promise or not? And it's not a promise. And as far as whether this was... Let me just ask, if we just focus on the written, the waiver itself, nothing else, is it possible to write something specifically enough? And let's not even worry about collateral review. Let's just imagine the judge dies, one of the judges dies in the next couple of days. Is it possible to write something specific enough that the defendant can enforce it and it's not now discretion for the judge but the defendant can say, now we were quite explicit in this writing that I would waive the jury trial if these three judges were going to do it. One's dead and they've just spelled it out in every which way. And we're not talking collateral review. Would you agree that that is enforceable by the defendant or would you say, no, this isn't a plea bargain? It would be the latter, Your Honor. Our first response, and the most important principle of law here, is that waivers are not always contracts. And plea bargains stand alone under this precedence that you can make an analogy to a contract. But if you are going to adopt a new rule of law that waivers for jury rights can be contracts, then contract principles doesn't provide a basis for relief for Mr. Davis. That's an in the alternative argument that could be made based on the four corners of this document and not looking at any plural evidence like the colloquy involved. Is there such a thing as a conditional waiver? Like, I'll waive it if this circumstance is going to be in place? Does the law recognize that possibility? Well, Your Honor, I haven't found any Supreme Court precedence that involve that type of conditional waiver outside of the plea bargain context. So maybe defendants think, I'll talk to the police on the condition that they don't arrest me and maybe even say that. And that has never been held as an enforceable promise where contract law principles apply in knowing waivers of the Miranda right, for example. I'm trying to get outside of the contract setting. It's just, you know, I'll waive it if this circumstance is present. There's no other party. And is that waiver then effective only when that circumstance is present? I was just wondering if you know of case law either way? I don't know of any case law that addresses that in the context of a criminal sentencing. There may be instances in private law and civil law where you can make some sort of waiver. But that's far afield from the circumstances involved here. So I don't want to speak beyond that. If you don't know it, it's okay. That's what I was asking. No, I know of no precedent of that nature. What about I waive so long as the state is seeking the death penalty and the state can always change its mind at the last minute and decide we're not going to seek the death penalty. In that setting, you get the jury. What would be so unusual about that? That would require some bespoke remedy that seems to stand outside of the statutory right that is at issue here. And I think it's important that this is a unilateral Ohio law right offered to all defendants who face the death penalty. And so it is only in the death penalty context that it stands kind of like this. That's why it's conditional. I don't know that it's conditional in the sense that if the prosecutor was no longer seeking the death penalty, I don't think this specific statutory provision would apply in the way that it does here, where you get these three judges and you have the unilateral right to get these three judges and the court can't refuse you these three judges if you don't want them. In other words, if they're seeking life, you just get one judge or a jury. That's my understanding of the law. It's because the death penalty is different that there is already a bespoke statutory creation by the General Assembly of Ohio. And I think it's important to emphasize that defendants exercise this type of waiver of rights unilaterally for all kinds of strategic reasons, like the strategic reason that Mr. Davis testified in his affidavit was the reason here. It was because the weapon under disability charge was not severed. And so if he was tried in front of a jury, the jury would have heard about his prior conviction for killing his wife, stabbing her to death. And he thought that that might alarm a jury. And so our position is, from standing where we are right now, the voluntary and knowing principle, that if I had only known that it's possible that these judges could have changed, I wouldn't have done that, is belied by that 1993 affidavit, that he would have probably made the same exact choice that he did even if we were in Hamilton County and we had ten judges in the general division and the judge didn't have any kind of colloquy like this. And so the colloquy cannot be perceived as a but-for or even approximate cause of his exercise of Ohio's unilateral statutory right that it offered him. Instead, this was Mr. Davis looking at the trade-offs involved. I notice the court hasn't asked any questions about the ineffective assistance of counsel claims that are involved here. If there are no questions about that, I'm happy to rest on the briefing. You mentioned the prior offense of stabbing his estranged wife. And I just want to make sure I have the timeline right. In 1983, he then shoots and kills Ms. Butler and is convicted the following year and sentenced to death?  And between 1984 and today, this case has spent 24 years in the federal courts, I think? That's right. Between 1997, 2007, 2016 to the present. So 17 years so far in the federal courts, this case. It's been going on for quite some time, Your Honor, yes. And the whole reason that we think AEDPA is so important is that this calibrates the federal-state relationship. The state hasn't been able to execute this judgment, hasn't been able to deliver justice in this particular case because it's been tied up for so long in habeas review. And this is his third resentencing that he's attacking. He's saying the third resentencing he's getting is still constitutionally deficient in some way. Was the first resentencing at the behest of the state court? That's correct, yes. So there was a resentencing based on... No, we're arguing that the urgency and the finality concerns that AEDPA is intended to facilitate are at their apex, even though one of those resentencing was because of the Ohio Supreme Court concluding that he needed to be resentenced and faced the original panel for that first resentencing. And then the federal courts are responsible for the last two resentencings. So the first resentencing was in front of the very same three judges? That's my understanding, yes. Right, they were still in active service. Two of those judges are no longer serving. One of them has unfortunately passed away. One of the judges was born in 1918. The judges in Ohio usually have a retirement age at 70. And so it would be unreasonable to think that you would get these three judges forever and for all time. Okay, I don't think we have any other questions. Thank you very much, Mr. Geiser and General Geiser. And Ms. Bonhart, you have your rebuttal. Thank you. To begin, I'd just like to make a factual correction to what I understood you to be asking Judge Sipar. If a conviction was vacated, then yes, a waiver would no longer be binding in Ohio. And the Ohio Supreme Court talks about that in distinguishing the guidance that this court last time gave the Ohio courts about how in federal court this type of waiver wouldn't be binding, even for a resentencing. And the Ohio Supreme Court said, well, in Ohio, that would be true if it was a redo of the conviction phase, but not for the guilt phase. And also, if the state were to not seek the death penalty, then it would just be a sentencing before a judge like any other non-capital sentencing. What do you say to the state's argument that the claims that are exhausted face AEDPA, and there's no case on point, or if they're unexhausted, well, you have an unexhaustion problem. So how do you deal with that? Yeah, well, I'd like to actually make sure that I address any concerns the court has about exhaustion, particularly on the knowing involuntary claim. We didn't talk about that. Why don't you spell them out? Which ones do you think have been exhausted? And I take it you assume if they've been exhausted, then AEDPA applies? Right, for sure. So I guess I don't believe the warden accurately characterizes what he claims. He divided it into two. He said that back in state court, the knowing involuntary claim was based on changed circumstances, and now it's based on deception. I think that is just a mischaracterization of a knowing involuntary claim. So you're making the point that is exhausted. Correct. Which therefore means we say AEDPA applies. Absolutely. And there's no doubt that there's a long line of claims. What do you think AEDPA doesn't apply to? I'm sorry? Are any of the theories ones that AEDPA does not apply to? Well, I mean, AEDPA deference would not apply once the state court has been shown to have unreasonably decided the claim, adjudicated the claim, if that's what you're asking. So some of the claims we would review de novo if we decided that AEDPA deference didn't apply. Correct. But are you asking if there is a claim not adjudicated on the merits? That's right. Yes. That is one way of looking at the bargain claim, is that the state court didn't adjudicate it on the merits. And they would say that's because it wasn't raised. Right. Well, their position in the rehearing petition was that it was adjudicated on the merits, but they just didn't mention it because it was too insubstantial to merit discussion. Meaning AEDPA deference applies. Correct. Our response to that was that, you know, you can't say that foregoing discussing a federal due process claim where the rights are more expansive than the state court claim that you do discuss means that you've adjudicated it on the merits. So back to the knowing involuntary. I guess, I mean, quite simply, I just want to know if anyone in the court feels that it has not been exhausted. Because I think just to quickly clear up a knowing involuntary claim, you know, there's always going to be some sort of lag between when a waiver is entered and when it becomes clear that the defendant's understanding of that waiver is in conflict with what the court believes. In this case, that lag was long, but there's always some sort of lag. And I think the warden is trying to call that changed circumstances, but it all goes back to the fact that the understanding at the time the waiver was entered was not knowing involuntary, what he's calling now the deception or the misunderstanding. So there is, as I see it, no difference between the two, or certainly that was the claim that was exhausted in state court. So I just want to, if the court has any concerns about that, I just wanted to address that. You think ENPA applies, but ENPA deference does not apply? Well, I believe, yes, ENPA applies, but then because the Ohio Supreme Court did not reasonably apply the clearly established federal law by not, you know, looking at what the Supreme Court says, you need to look at the particular and unique circumstances, the direct consequences of the waiver. I believe we meet 2254 D1, and then de novo review would be appropriate.  And I just want to address something that the warden said, something about, I think he tried to kind of invoke that the standards are way too high and general. The Third Circuit talks about this in Jameson as well. Unlike what this court said in Fields about the type of claims that the defendant was raising there, I think the no involuntary claim is much more like a Strickland IAC claim in which the principles are clearly established, the test is clearly established, and there's no question that courts apply that in all different sort of factual situations. So for those reasons, we ask this court to reverse. Thank you. Okay, thanks so much. Thanks to both of you for really helpful briefs and arguments and for answering our questions, for which we're always grateful. So thank you. The case will be submitted, and the clerk may adjourn court.